KESSLER, P.J.[1]
¶1 L.V. appeals the order terminating his parental rights to his daughter, A.N.L.-V. L.V. argues that he received ineffective assistance of counsel during his jury trial. We affirm.
BACKGROUND
¶2 On April 27, 2016, the State filed a petition to terminate L.V.'s parental rights to his daughter alleging that the child was in continuing need of protection or services (continuing CHIPS). An amended petition also alleged failure to assume parental responsibility. L.V. denied the allegations and the matter proceeded to a jury trial.
¶3 Prior to trial, L.V., through counsel, filed a motion in limine seeking to prohibit, among other things, "the State from introducing evidence of [L.V.'s] criminal record prior to the child's birth on July 27, 2012 as it is dated and not relevant to the present proceedings." The trial court addressed the motion at pretrial hearing. The State told the court that it did not intend to introduce evidence of L.V.'s criminal record. The court declared that motion moot.
¶4 Multiple witnesses testified at the trial including the initial assessment social worker, the child's foster mother, the ongoing case manager, and two West Allis police officers. L.V. also testified. As relevant, the following exchange took place between the State and L.V.:
[State]: Do you have a criminal record?
[L.V.]: Yes.
[State]: And how many times have you been convicted?
[L.V.]: About, what, seven, eight.
[State]: How many times have you gone to prison?
[L.V.]: Five.
Trial counsel objected at that point and the parties had a side bar conference with the trial court. When the parties returned on the record, the trial court explained that defense counsel withdrew his objection:
[The Court]: I believe the objection is withdrawn, and, sir, you can answer the question.
L.V. then repeated that he had gone to prison five times.
¶5 After the jury left for lunch, the trial court explained the side bar discussion:
I think there was one side bar during that session regarding [trial counsel's] objection to questions about the criminal record and the number of times that [L.V.] has been in prison. I will note that the State did not make a motion in limine in this case setting forth the convictions that the State was seeking to use and addressing that issue ahead of time; however, [trial counsel] at the side bar stated that he was withdrawing his objection based on an understanding that the State was not going to ask anything further beyond the number of times in prison. So that has been withdrawn.
(Italics added.)
¶6 The jury ultimately returned a verdict finding that grounds existed to terminate L.V.'s parental rights. Following a contested disposition hearing, the trial court entered an order terminating L.V.'s parental rights to his daughter.
¶7 L.V. filed a motion for remand arguing that he was entitled to a new trial because trial counsel rendered ineffective assistance when he failed to object to the State's questioning about L.V.'s criminal record and when he failed to move for a mistrial. L.V. also filed a notice of appeal. We remanded the matter for an evidentiary hearing.
¶8 At the evidentiary hearing, trial counsel testified that he did not recall why he withdrew his objection to the State's questions about L.V.'s criminal record. He testified that he could not recall a tactical or strategic reason for withdrawing the objection. Trial counsel also testified that information about L.V.'s criminal record could have been prejudicial and that he should have requested a mistrial.
¶9 The postdisposition court denied L.V.'s motion for a new trial. The court found that counsel's performance did not prejudice L.V. The court found that the record, specifically L.V.'s own testimony, supported the jury's findings. This appeal follows.
DISCUSSION
¶10 On appeal L.V. argues that "[t]rial counsel's failure to object to and seek a remedy for the State's introduction of evidence that L.V. had been to prison on five separate occasions, and without a prior determination of admissibility under [ WIS. STAT. ] §§ 906.09 and 901.04, that L.V. had been convicted of a crime on seven or eight occasions, was both deficient and prejudicial." (Italics omitted.) We disagree.
¶11 Parents are entitled to effective assistance of counsel in proceedings to involuntarily terminate parental rights. See A.S. v. State , 168 Wis. 2d 995, 1004, 485 N.W.2d 52 (1992) ; WIS. STAT. § 48.23(2)(b). To establish ineffective assistance of counsel, L.V. must show that counsel's performance was deficient and prejudicial. See Strickland v. Washington , 466 U.S. 668, 687 (1984). To prove deficient performance, L.V. must establish that counsel's conduct fell below an objective standard of reasonableness. See State v. Thiel , 2003 WI 111, ¶¶18-19, 264 Wis. 2d 571, 665 N.W.2d 305. To prove prejudice, L.V. must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See id. , ¶20 (quoting Strickland , 466 U.S. at 694 ).
¶12 Our review of an ineffective assistance of counsel claim presents a mixed question of fact and law. See id. , ¶21. We do not disturb the trial court's findings of fact unless they are clearly erroneous. See id. "We review de novo the legal questions of whether deficient performance has been established and whether it led to prejudice rising to a level undermining the reliability of the proceeding." Id. , ¶24. A court reviewing a claim of ineffective assistance of counsel "may reverse the order of the two tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice." State v. Johnson , 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).
¶13 To establish continuing CHIPS, the State was required to prove four elements by clear, satisfactory, and convincing evidence: (1) the child was adjudged in need of protection or services and placed, or continued in a placement, outside L.V.'s home for a cumulative period of six months or longer pursuant to one or more court orders containing a termination of parental rights notice; (2) the Division of Milwaukee Child Protective Services made a diligent effort to provide the services ordered by the court; (3) L.V. failed to demonstrate substantial progress toward meeting the conditions established for the return of his child to the home; and (4) there was a substantial likelihood that L.V. would not meet those conditions within the nine-month period following the conclusion of the hearing at which the jury was to determine whether grounds existed for termination. See WIS. STAT. § 48.415(2). To establish a failure to assume parental responsibility, the State had to prove that L.V. did not have a substantial parental relationship with his daughter, i.e., that L.V. had not accepted and exercised significant responsibility for the child's daily supervision, education, protection, and care. See § 48.415(6).
¶14 Assuming, without deciding, that counsel performed deficiently, we agree with the postdisposition court that counsel's performance did not prejudice L.V. Even without testimony about L.V.'s criminal record, there is not a reasonable probability of a different result at trial. Multiple witnesses, including L.V., testified at the jury trial about L.V.'s failure to meet the conditions for his child's return and his failure to assume parental responsibility.
¶15 L.V. testified at length and stated that he did not attend dental or doctors' appointments, and he did not attend any school events other than one parent-teacher conference. L.V. stated that he never attended A.N.L.-V.'s therapy appointments and that he only contacted her therapists once or twice in the last year. L.V. stated that his visits with his child began at two hours twice per week, and increased to four hours twice per week. Only about one month before the time of the trial, L.V. progressed to partially unsupervised visits, but never received overnight visits. L.V. admitted to not confirming visits, cancelling visits, and missing visits as recently as the Friday before trial. L.V. admitted to knowing the expectations of him within the CHIPS' order, but still missed about one-third of his AODA sessions, stated that he did not need the referred services, and posted a seemingly threatening message on Facebook stating, "please say a prayer ... don't let me snap, Lord or don't let me smack the DA, Lord or don't let me karate kick the caseworker." L.V. also testified that he does not provide care items for his daughter because "[s]he is not living with me," further stating, "I take care of my daughter when she lives with me. If they need assistance, they need to ask me."
¶16 A.N.L.-V.'s foster mother testified that in a two and one-half year period, L.V. had contacted her only twenty times to inquire about his daughter's wellbeing. The foster mother stated that L.V. had her phone number and there were no prohibitions or limitations regarding phone contact between her and L.V. She testified that L.V. did not provide any food or financial assistance for the child, nor did he attend doctors' appointments, despite being made aware of the appointments.
¶17 Jennifer Ramirez, a former initial assessment case worker with the Division of Milwaukee Child Protective Services, testified that in May 2014, L.V. was arrested and taken into custody by the West Allis Police Department for aggravated battery and assault. The child was detained and Ramirez received a referral to investigate the matter. Ramirez testified that she took the child into custody after discovering that the child was present during an incident of violence at L.V.'s home and after discovering the unsanitary conditions in which the child was living. Specifically, Ramirez testified that there were no working appliances in the home, alcohol was dumped all over the home, there was no plumbing, rotting food was found in a cooler, there was a dirty baby bottle with warm milk on the counter, and windows were broken out and covered with bags. Ramirez testified that A.N.L.-V. was found covered with a blanket and her clothing was soiled with urine.
¶18 City of West Allis Police officers also testified in detail about the conditions in which they found the child. Officer James Plotkin testified that he was on patrol on the morning of May 8, 2014, and observed three people running along the side of an industrial factory early in the morning. A male party, subsequently identified as L.V., was chasing two females. Officer Plotkin observed that the two females had bruising and swelling about their faces, which was believed to have been caused by L.V. L.V. appeared to be intoxicated. L.V. explained to Officer Plotkin that he and the two women were having a birthday party in his mobile home, and the women had taken his wallet and cellphone. He then chased them to retrieve his items and stated that he needed to tackle them to do so. L.V. stated that he needed to get back to his mobile home to check on his baby. Plotkin testified that he accompanied L.V. back to his mobile home and found the child in "deplorable" conditions. Plotkin's observations essentially matched Ramirez's testimony about the unsanitary conditions.
¶19 Based on the testimony provided at trial, we conclude that L.V. was not prejudiced by counsel's withdrawal of his objection and counsel's failure to move for a mistrial. Based on the record before us, specifically L.V.'s own testimony, we conclude that there is not a reasonable probability of a different result at trial. Accordingly, we affirm.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.